UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


RMT, Incorporated,

    Plaintiff,                           CASE NO. 09-CV-11650

v.                                    DISTRICT JUDGE THOMAS L. LUDINGTON
                                     MAGISTRATE JUDGE CHARLES E. BINDER

SPE Utility Contractors, L.L.C.,

    Defendants.
_____/


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANT'S MOTION TO PARTIALLY DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(b)(6)**
(Doc. 7)


**I.     RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant's motion be **GRANTED** and that Count III of the complaint be dismissed.


**II.    REPORT**

    **A.     Background**

Plaintiff RMT, Incorporated ("RMT"), was the general contractor on a project to construct the Noble Thumb Windpark[1] ("Windpark") in Huron County, Michigan.  Windpark is the owner of the property upon which the construction occurred.  Defendant SPE Utility Contractors, L.L.C.

---

[1] It is also known as the Michigan Thumb Windpark.

("SPE"), is a subcontractor pursuant to Master Subcontract #80008, which provided that Defendant SPE would provide installation and other related services. The parties' dispute began after change orders attempted to modify the work and the resulting amount of compensation that SPE was to receive. In March and April of 2009, SPE filed in Huron County, Michigan, an original and then amended construction lien against the real property owned by Windpark. (Claim of Lien, Doc. 1 at Exs. A, B.)

On April 30, 2009, RMT filed its complaint in this Court, averring the following claims: Breach of Contract (Count I); Estoppel (Count II); Declaratory Judgment that SPE's lien is invalid (Count III); Quiet Title/Slander of Title (Count IV). SPE's motion to partially dismiss the complaint concerns Counts III and IV only. (Doc. 7.) RMT stipulated to the dismissal of Count IV on July 14, 2009. (Doc. 16.) Therefore, this Report and Recommendation only addresses the motion with regard to Count III.

This Court's subject matter jurisdiction over this action is based exclusively on diversity of citizenship of the parties; therefore, Michigan law controls the underlying dispute. *Himmel v. Ford Motor Co.,* 342 F.3d 593, 598 (6th Cir. 2003). A detailed factual background is not needed here because the instant motion focuses entirely upon the question of whether RMT has standing to challenge the validity of the lien imposed by SPE. Plaintiff filed the motion to partially dismiss on June 10, 2009, Defendant filed a response (Doc. 15), and Plaintiff filed a reply. (Doc. 17.) Oral argument was heard on July 23, 2009. Therefore, the motion is ready for Report and Recommendation.

**B.     Motion Standards**

In facing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he court must construe the complaint in the light most favorable to

2

the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570 (rejecting the traditional Rule 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. (citations omitted).

The Supreme Court recently explained that the "tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1949 (2009) (finding assertions that a defendant was the "principal architect" and another defendant was "instrumental" in adopting and executing a policy of invidious discrimination were insufficient to survive a motion to dismiss because they were "conclusory" and thus not entitled to the presumption of truth). Although Rule 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1950. "Determining whether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

### C. Analysis and Conclusions

Defendant SPE's motion to dismiss argues that Plaintiff RMT lacks standing to challenge the construction liens filed by SPE because, under Michigan law, although a construction lien arises from a contract, it is effectuated against the real property rather than the person who contracted for services. (Doc. 7 at 9-10.) SPE asserts that an action seeking to enforce or invalidate a construction lien must therefore be brought against the person or entity that has an interest, e.g., ownership or lease, in the real property. (*Id.*) RMT's response argues that its contractual relationship with SPE is sufficient to confer standing and cites several cases, all of which are from states other than Michigan, that it contends support the notion that RMT has an interest in the property that would confer standing. (Doc. 15 at 10-13.) SPE's reply first contends that cases from a jurisdiction other Michigan are not binding and, second, argues that even if the cases were binding, they are factually and legally distinguishable. (Doc. 17 at 5-7.)

Michigan law provides a construction contractor, subcontractor, supplier, or laborer with a right to lodge a construction lien against real property for unpaid improvements made to the property. MICH. COMP. LAWS § 570.1107(1). The lien attaches to the entire interest of the owner who contracted for the improvement to the real property, including any subsequently acquired legal or equitable interest. MICH. COMP. LAWS § 570.1107(2). The lien is "upon the improvement" and is enforceable even if the "person contracting for the improvement had no legal title" to the real

4

property or if title was subsequently transferred. MICH. COMP. LAWS § 570.1107(3). The "claim of lien shall be valid only as to the real property described in the claim of lien and located within the county where the claim of lien has been recorded." MICH. COMP. LAWS § 570.1111(1). Thus, an action to enforce a construction lien is an *in rem* proceeding against the property that has been improved. *Dane Construction, Inc. v. Royal's Wine & Deli, Inc.*, 192 Mich. App. 287, 292, 480 N.W.2d 343 (1992). "Although the proceeding to foreclose on the construction lien originates from the contract, it is an action directed at the property rather than the person or entity who contracted for the services and is separate and distinct from an action for breach of contract." *Id.* at 292-93; MICH. COMP. LAWS § 570.1107(5). "In connection with an action for foreclosure of a construction lien, the lien claimant also may maintain an action on any contract from which the lien arose." MICH. COMP. LAWS § 570.1117(5). Since a lien foreclosure operates upon the real property itself, Michigan law provides that to bring an action to discharge or foreclose on the lien, one must be an owner of the real property or one that has an interest in the real property that could be divested or otherwise impaired by foreclosure. MICH. COMP. LAWS §§ 570.1114a(1), 570.1117(4).

Since Plaintiff RMT is a general contractor and has not claimed any ownership, leasehold or other interest in the real property that could be affected by the lien, I suggest that Michigan law does not confer standing on RMT.[2] At oral argument, Plaintiff's counsel contended that Plaintiff's relationship with the defendant subcontractor and others is being harmed; I suggest that the harm to these relationships is caused by the pending dispute, including the breach of contract action,

---

[2]Both parties cite *Republic Bank v. Modular One, L.L.C.*, 232 Mich. App. 444, 591 N.W.2d 335 (1998), and *Stokes v. Millen Roofing Co.*, 466 Mich. 660, 649 N.W.2d 371 (2002). However, these cases stand for the proposition that a property owner has standing to bring a quiet title action even though it was not a party to the original construction contract. Here, the opposite issue is presented: whether a non-property-owner who is a party to the contract giving rise to the lien has standing to challenge the validity of the lien. Thus, these cases are inapposite.

rather than by the lien itself. The lien has no effect on the relationship between Plaintiff and Defendant; the lien is "upon the improvement" and allows that improvement to be foreclosed upon. MICH. COMP. LAWS § 570.1107(3). In addition, although Plaintiff's counsel implied that Plaintiff would be without remedy if Count III were dismissed, the pending breach of contract claim (Count I) will not be affected by resolution of this motion and its contractual rights may be protected in that claim.

Plaintiff also asks the Court to focus on case law rather than the Michigan statutes and to focus on the common law from other jurisdictions. The three cases that Plaintiff RMT relies upon to assert that it has an interest in the real property that would confer standing are: *Potter v. Ables*, 242 Ill. App. 3d 157, 610 N. E. 2d 159 (1993); *Taylor Electrical Services, Inc. v. Armstrong Electrical Supply Co.*, 167 S.W.2d 522 (2005); and *Ibarra v. Nicholes*, No. 01-06-00762-CV, 2007 WL 2214889 (Tex. App. Aug. 2, 2007) (unpublished). I will address each in turn.

In *Potter*, the plaintiff was the real property owner at the time the improvements were made but he had transferred ownership to another before filing suit. The court held that because he conveyed the property via a warranty deed, he had a duty, under an Illinois statute, to defend the title from all encumbrances and, thus, had an interest sufficient to confer standing. Plaintiff RMT does not allege that it ever had an ownership interest in the instant property; thus, *Potter* is distinguishable from the instant facts.

In *Taylor*, the plaintiff owed the defendant a debt such that he was "contractually obligated to remove, pay to remove, and indemnify" the defendant against any liens or claims filed against the defendant's property. The court interpreted Texas's Fraudulent Lien or Claim statute that allows property owners and "obligors or debtors" to file suit against those who violate the statute, 167 S.W.2d at 530, and held that, "because of this contractual obligation," the plaintiff "was an

6

obligor or debtor entitled to pursue a cause of action against [the defendant] even though it was not the actual property owner against whose property the liens had been filed." *Id.* at 531. In the instant case, there is no analogous statute that provides a cause of action nor are the facts of this case similar. Therefore, *Taylor* in not persuasive.

In *Ibarra*, the plaintiff salon sued Ibarra for negligence in construction work performed for the salon on property the salon leased. Under the relevant lease agreement, the "Salon 'acts as principal and not as agent of the Landlord' with regard to the making of improvements to the premises and the Salon 'agrees to indemnify and hold [the] Landlord harmless from all claims (including costs and expenses of defending against such claims) arising or alleged to arise from any act or omission of . . . [the Salon's] . . . contractors, subcontractors, laborers, [and] materialmen . . . ." 2007 WL 2214889 at *4. The court found that, "because the Salon is contractually bound under the lease to defend the Landlord against a suit by the Salon's subcontractors and the presence of Ibarra's liens on the fee estate as a result of the improvements made to the Salon's leasehold constitutes a default by the Salon under its lease, the Salon has demonstrated that it is 'personally aggrieved' by Ibarra's liens and that the Salon has a sufficient relationship with the lawsuit to have a 'justiciable interest' in its outcome." *Id.* at *5. Plaintiff RMT does not assert any contractual obligation that it is a lessee obligated to defend and indemnify Windpark or that any lien imposed by Defendant SPE constitutes a default of any such lease. Therefore, I find *Ibarra* inapposite to the instant case.

Michigan law therefore supports Defendant SPE's motion and the extra-jurisdictional cases cited by Plaintiff are not binding and further are not factually relevant or legally persuasive. I therefore suggest that Defendant SPE's motion to dismiss Claim III should be granted.[3]

### III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

     s/ *Charles E Binder*
     CHARLES E. BINDER
Dated: August 4, 2009     United States Magistrate Judge

---

[3] During oral argument, defense counsel also argued that Plaintiff's assertion, in response to the instant motion, that Defendant SPE's lien was filed with malicious intent was not raised in the complaint and thus, any such claim should be dismissed. Plaintiff's counsel responded that Plaintiff would be happy to amend the complaint to expressly make such an assertion. Since these arguments are not probative on the issue of standing as to Count III raised in the instant motion to dismiss, they are not addressed in this Report.

## **CERTIFICATION**

     I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  August 4, 2009                                  By    s/Patricia T. Morris  
                                                                   Law Clerk to Magistrate Judge Binder