**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

RMT, Incorporated,

    *Plaintiff*,                          CASE NO. 09-CV-11650

*v.*                                 DISTRICT JUDGE THOMAS L. LUDINGTON
                                   MAGISTRATE JUDGE CHARLES E. BINDER

SPE Utility Contractors, L.L.C.,

    *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
(Doc. 36)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Plaintiff's motion be **DENIED.**

## II. REPORT

### A. Background

Plaintiff RMT, Incorporated ("RMT"), was the general contractor on a project to construct the Noble Thumb Windpark[1] ("Windpark") in Huron County, Michigan. Windpark is the owner of the property upon which the construction occurred. Defendant SPE Utility Contractors, L.L.C. ("SPE"), is a subcontractor pursuant to Master Subcontract #80008, which provided that Defendant SPE would provide installation and other related services. The parties' dispute began after change orders attempted to modify the work to be performed by SPE and the corresponding amount of

---

[1] It is also known as the Michigan Thumb Windpark.

compensation that SPE was to receive. In March and April of 2009, SPE filed, in Huron County, Michigan, an original and then amended construction lien against the real property owned by Windpark. (Claim of Lien, Doc. 1 at Exs. A, B.) On April 29, 2009, RMT issued a check to SPE for $372,900.92. (Doc. 40, Exs. K, L.)[2]

The next day, RMT filed its complaint in this Court, averring the following claims: Breach of Contract (Count I); Estoppel (Count II); Declaratory Judgment that SPE's lien is invalid (Count III); Quiet Title/Slander of Title (Count IV). RMT stipulated to the dismissal of Count IV on July 14, 2009. (Doc. 16.) A previous Report and Recommendation (R&R) recommended dismissal of Count III and was adopted on August 27, 2009. (Docs. 18, 20.) Therefore, only Counts I and II remain.

This Court's subject matter jurisdiction over this action is based exclusively on diversity of citizenship of the parties; therefore, Michigan law controls the underlying dispute. *Himmel v. Ford Motor Co.,* 342 F.3d 593, 598 (6th Cir. 2003). Plaintiff RMT filed the instant motion for partial summary judgment on August 6, 2010 (Doc. 36), Defendant SPE responded on August 26, 2010 (Doc. 40), and Plaintiff RMT replied on September 15, 2010. (Doc. 43.) Oral argument was heard on September 22, 2010. Therefore, the motion is ready for Report and Recommendation.

**B.     Motion Standards**

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving

---

[2]According to the parties, this is the only payment made from RMT to SPE.

2

party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406. "Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment." *Arendale v. City of Memphis*, 519 F.3d 587 (6th Cir. 2008) (granting summary judgment where plaintiff supported each allegation of racial animus only with citation to his own testimony stating his opinion that he was the victim of racial harassment).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### C. Analysis and Conclusions

### 1. Arguments of the Parties

Oral argument clarified the parties' positions. This motion involves only SPE's countercomplaint (Doc. 34) which alleges breach of contract and unjust enrichment for work done on the underground collector system (UG) aspect of the project. This UG construction was based on a work authorization dated June 18, 2008. The motion for partial summary judgment centers around an alleged agreement that was said to have been reached during a phone call between Kenny Knecht (RMT) and Mike Moriarity (SPE's president) which was memorialized in an e-mail sent from Knecht to Moriarity on January 22, 2009. The email stated:

> Mike,
>
> Thanks for your time. As discussed, I am approving the $34,116.44 that SPE has billed over the final approved cost for this work. That is, the total amount SPE billed ($1,862,203.44) will be approved for payment and will be considered the final total cost for the collector system work at the Thumb.
>
> Also, as discussed, please forward a tentative available date for the 'Lessons Learned' discussion.
>
> Thanks Mike.
>
> Kenny

(Doc. 44 at 21, Ex. 29 of Moriarity deposition.) Mike's response stated:

Kenny,

Thanks for the additional amount approved. I hope that we can do this call next week when Dave gets back in town.

I will call you when I get a couple dates for that call.

Mike.

(*Id.*) As to the UG contract, SPE seeks in its counter-complaint $574,011.73 in damages, with $186,220.34 representing retainage (or retention)[3] and $387,791.39 representing change orders. (Doc. 45.)

RMT argues that Mike Moriarity's uncommunicated, subjective "intent" that the $34,116.44[4] amount was not "final" is legally irrelevant, that Moriarity had the actual and apparent authority to agree to a final payment amount and bind SPE, and that Moriarity did in fact so bind SPE. (Doc. 36.)

SPE contended at oral argument that this agreement that RMT would pay the additional $34,116.44 could not have been considered a final resolution of monies owing to SPE because SPE's work continued on the UG project beyond the date of the phone call and e-mail. SPE also argued that it would have been absurd for SPE to have settled for that amount because if they had done so, SPE would have been agreeing to surrender its claim against RMT for $387,791.39 in exchange for $34,116.44. (Doc. 40.) SPE also argues that any agreement was an attempted accord and satisfaction, which is not enforceable because the elements of accord and satisfaction have not been met. Specifically, SPE notes that RMT has not tendered any payment and that the $34,116.44 was not liquidated before January 22, 2009. (Doc. 40.) SPE also argues that a question of fact

---

[3]The parties indicated at oral argument that retainage amounts are uncontested amounts.

[4]At times, this amount is referred to generically as the $34,000 amount by both the parties and the court.

5

exists as to whether there was a meeting of the minds, i.e. whether an agreement was actually reached between the parties.[5]

RMT countered during oral argument that it is not alleging that the $34,000 amount represents an accord and satisfaction,[6] but rather that the settlement evidenced in the above e-mails was a new contract which firmed up the entire amount owing from RMT to SPE for the UG project. RMT further contends that Moriarity had authority to enter into the agreement; that he wasn't silent, but rather thanked Knecht; and that RMT did not agree to pay the additional amount ($34,116.44) prior to the January 22, 2009 agreement, so that amount was not liquidated before that date. (Doc. 43.)

2. **Accord and Satisfaction**

"An accord is a contract and requires a meeting of the minds of those who enter into it." *Hoertsman General Contracting, Inc. v. Hahn*, 474 Mich. 66, 70, 711 N.W.2d 340, 344 (2006). "A satisfaction is the discharge of the debt occurring after acceptance of the accord." *Id.* An accord and satisfaction is an affirmative defense. *Id.* "Cases in which an accord and satisfaction defense is relevant involve a good-faith dispute about an unliquidated amount owing under a contract. One party makes a tender in satisfaction of the claim (an accord). The other accepts or rejects the accord. If the second party accepts the tender, there is both an accord and satisfaction." *Id.* at 71. "In order to effect an accord and satisfaction, 'the tender must be accompanied by an explicit and clear condition indicating that, if the payment is accepted, it is accepted in discharge of the whole claim." *Stanford v. Gaultieri*, No. 260017, 2005 WL 1335340, at *2 (Mich. App.

---

[5] Although SPE argued in its response brief that Moriarity lacked authority to assent to the agreement, this argument was not pursued at oral argument.

[6] I note that RMT did allege accord and satisfaction in its answer to the first amended counter-complaint (Doc. 35), but has apparently abandoned that defense.

June 7, 2005). "If the tender is in full satisfaction of an unliquidated claim, the amount of which is in good faith disputed by the debtor, and the creditor is fully informed of the condition accompanying acceptance, an accord and satisfaction is accomplished if the money so tendered is retained, for there can be no severance of the condition from acceptance and it avails the creditor nothing to protect and notify the debtor that the amount tendered is credited on the claims and not accepted in full satisfaction." *Id.*

3. **Application and Analysis**

After considering the arguments presented , I conclude first that there was no tender made by RMT and no acceptance of a tender by SPE. As a result, the elements of accord and satisfaction were not met. SPE would have the inquiry end there. However, in Michigan, an accord can exist without satisfaction and RMT has alleged that a settlement agreement was reached, whether it is called an accord or a substitute contract or a new contract. Michigan statutory law provides guidance on such settlement agreements:

> An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration; Provided, That the agreement changing, modifying, or discharging such contract, obligation, lease, mortgage or security interest shall not be valid or binding unless it shall be in writing and signed by the party against whom it is sought to enforce the change, modification, or discharge.

Mich. Comp. Laws § 566.1. Despite inclusion of language regarding real or personal property, Michigan courts have held that this statute covers all agreements to modify or discharge any type of obligations. *Adell Broadcasting Corp. v. Apex Media Sales, Inc.,* 269 Mich. App. 6, 708 N.W.2d 778 (2006). In addition, Michigan law indicates that continuation of the parties' business relationship is sufficient consideration for their amended agreement. *Id.*

I next conclude that the parties agreed, and remain in agreement today, that the $34,116.44 was approved by both sides and is owed to SPE and will eventually be paid by RMT to SPE. (*See, e.g.*, Doc. 37, Ex. A at 96 (Moriarity dep.); Ex. A (letter from Mr. Knecht to Mr. Postill); Doc. 37 at Ex. B (Knecht declaration).) The written e-mail exchange as to the $34,116.44 figure, I therefore conclude, likely satisfies the requirement of a writing and would be enforceable under Michigan law without any new consideration.[7] Thus, I suggest that a binding agreement exists between RMT and SPE for RMT to pay SPE $34,116.44 additional monies for change orders.

However, I further suggest that it is not clear is whether that agreed upon amount of $34,116.44 also represents the *only* additional compensation for change orders that could ever be paid to SPE for the entire UG project.[8] Plaintiff's counter-complaint seeks damages representing not only the $34,116.44 but other compensation for work performed under change orders throughout the UG project.

Although SPE contends that it would not have settled the entire amounts owing on the UG contract for $34,116.44, there is at least some evidence to the contrary. Deposition testimony indicates that Moriarity remembered that David Postill of SPE, was not happy with the $34,000 figure because he wanted compensation in the several hundred thousand dollar range. (Doc. 40, Ex. M at 89.) On the other hand, Moriarity also recalled Postill talking about wanting to hold a meeting with RMT to discuss the amounts due under the change orders. (Doc. 37, Ex. A at 89.)

---

[7] At oral argument, counsel for RMT proffered RMT's promise to pay the $34,116.44 and SPE's promise not to sue RMT as new consideration for the agreement in the event that new consideration is needed to render the agreement enforceable. In addition, the parties' continuing business relationship would satisfy any requirement for new consideration pursuant to *Adell Broadcasting, supra*.

[8] I note that although parol evidence of prior or contemporaneous agreements that contradict or vary the terms of a written contract are not admissible to vary the terms of a written contract, "parol evidence of a subsequent agreement varying or abrogating a written contract is admissible." *McCalla v. Brogan,* No. 268045, 2006 WL 2270397, at *2 (Mich. Ct. App. Aug. 8, 2006).

8

The amount paid by RMT to SPE via the check dated April 29, 2009, does not settle the dispute. This check for $372,900.92 did not indicate that it was in full payment or in settlement or any other language indicating it was a payment in full for all monies owing on the UG project. (Doc. 40, Exs. K, L.) Neither David Postill, SPE's CEO, nor May Bland, SPE's project administrator, understood the check to represent a final or settled full payment of monies owing to SPE on the UG contract. (*Id.*)

Michael Moriarity could not remember whether the payment was "final" or not, recognizing that "final is a big word." (Doc. 40, Ex. M at 75.) Moriarity believed that the "whole purpose of the call [referenced in the January 22, 2009, e-mail] was the $34,000" and he did not think that the total cost of the project was discussed. (Doc. 40, Ex. M at 81.) Moriarity ultimately stated that is was not his intent to give the $34,000 figure as a "final approved amount." (Doc. 40, Ex. M at 93.) Moriarity could not remember what Knecht said about that same payment. (Doc. 37, Ex. A at 74.) On the other hand, Knecht indicated in a latter dated March 10, 2009, to Postill that the $34,000 figure was a final cost billing for the UG contract agreed to by Moriarity on January 22, 2009. (Doc. 37 at Ex. A, B.)

Nor do the parties' business practices provide definitive evidence of finality of the agreement. In the normal course of business, RMT repeatedly requested work that was outside the original scope of the written contract for the project, so this additional work would require additional costs. At times, SPE would wait for approval before taking on the additional work, but at other times, because the work needed to be done right away to avoid delaying the project, it would be undertaken before approval to do so. (Doc. 40, Ex. O, Locke Dep. at 23-24.) Because of these change orders, David Postill stated that each project ends with a close-out meeting to tie up loose ends and to tie down payments for change orders. (Doc. 40, Ex. N at 63.) This meeting

9

had not occurred at the time of the phone call and e-mail regarding the $34,116.44 figure. The notion that the final meeting and resulting agreement had not yet occurred is supported by Moriarity's indication that the reference to the future "lessons learned" meeting in the January 22, 2009, e-mail was a meeting which would be held to discuss the issues surrounding change orders and their timing toward the end of the project. (Doc. 40, Ex. M at 78.)[9]

### 4. Conclusion

After reviewing the evidence presented, I conclude that a genuine issue of material fact exists as to whether the $34,116.44 figure represented not only approval of additional costs but also a final agreed upon additional figure which would foreclose any further negotiations regarding compensation for change orders performed by SPE on the entire UG project. *See Boykin v. LFF Mortgage, Ltd.*, No. 25295, 2005 WL 1878377, at *2 (Mich. Ct. App. Aug. 9, 2005) (finding genuine issue of material fact where letters between the parties reflected negotiations but where it was unclear whether proceeds from sale of property were retained with knowledge that they were offered on condition that lien would be discharged). Accordingly, I recommend that RMT's motion for partial summary judgment as to SPE's counter-complaint be denied.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See*

---

[9]Although Walter Kruzuja indicated that he was responsible to approve or disapprove SPE's change orders, he did not recall the particular change order discussed in the January 22, 2009, e-mail. (Doc. 40, Ex. P at 43-44.)

10

*also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

                                                  s/ *Charles E Binder*
                                                  CHARLES E. BINDER
Dated: October 14, 2010                        United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date: October 14, 2010                                By    s/Patricia T. Morris
                                                                            Law Clerk to Magistrate Judge Binder